# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILMA ARAUCO MENDOZA,<br>Petitioner,<br>v.<br>MOISES BECERRA, et al.,<br>Respondents. | Case No. 1:26-cv-05071-KES-SAB-HC<br><br>FINDINGS AND RECOMMENDATION TO DENY MOTION FOR TEMPORARY RESTRAINING ORDER AND DENY RESPONDENTS' MOTION TO DISMISS<br><br>(ECF Nos. 1, 9)<br><br>ORDER DENYING REQUEST FOR EXPEDITED RULING<br><br>(ECF No. 14) |

Petitioner, represented by counsel, is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## I.

## BACKGROUND[1]

Petitioner is a citizen of Bolivia who was taken into U.S. Immigration and Customs Enforcement ("ICE") custody after posting bail in a state criminal matter. Arauco Mendoza v. Chestnut, No. 1:26-CV-00627-KES-SAB-HC, 2026 WL 1759575, at *1 (E.D. Cal. June 18, 2026), report and recommendation adopted, 2026 WL 2044983 (E.D. Cal. July 15, 2026). Petitioner had entered the United States as a B-2 nonimmigrant and was charged as removable under Immigration and Nationality Act section 237(a)(1)(B) for remaining longer than authorized. (ECF No. 10 at 2.[2])

[1] Given that the pleadings in the instant matter lack certain details regarding the factual and procedural background, the Court also relies on Petitioner's earlier-filed habeas case for this summary.
[2] Page numbers refer to the ECF page numbers stamped at the top of the page.

Petitioner has been detained since October 2025. (ECF No. 3 at 3.) On or about January 7, 2026, an immigration judge ("IJ") denied bond on the ground that Petitioner was a danger, referencing an arrest for battery in August 2025. Arauco Mendoza, 2026 WL 1759575, at *1. On April 14, 2026, an IJ ordered Petitioner removed. Petitioner filed a timely appeal to the Board of Immigration Appeals that is still pending. (ECF No. 1 at 2; ECF No. 9 at 1.)

On January 26, 2026, Petitioner filed her first petition for writ of habeas corpus and a motion for temporary restraining order ("TRO"). On February 5, 2026, the Court denied the motion for TRO. On April 9, 2026, Petitioner filed a first amended petition, which was denied on July 15, 2026. Arauco Mendoza, 2026 WL 1759575, at *1; Arauco Mendoza, 2026 WL 2044983, at *1.

Meanwhile, on June 30, 2026, Petitioner filed the instant motion for TRO and a second petition for writ of habeas. (ECF Nos. 1, 3.) On July 9, 2026, Respondents filed a motion to dismiss and opposition to the motion for TRO. (ECF No. 9.) On July 13, 2026, Petitioner filed an opposition to the motion to dismiss and reply in support of the motion for TRO. (ECF No. 10.) The motion for TRO and motion to dismiss were referred to the undersigned. (ECF No. 13.)

## II.

## DISCUSSION

### A. Successive Petition

Respondents assert that the petition should be dismissed because it substantially duplicates Petitioner's earlier habeas petition. (ECF No. 9 at 2–4.) The "doctrine of abuse of the writ generally 'forbids the reconsideration of claims that were or could have been raised in a prior habeas petition.'" Alaimalo v. United States, 645 F.3d 1042, 1049 (9th Cir. 2011) (citation omitted). A "successive petition that raises identical grounds for relief as a prior petition must be dismissed unless the petitioner can show (1) cause for bringing a successive petition and that prejudice would result or (2) that a fundamental miscarriage of justice would result from failure to entertain the claim." Id. (citations omitted).

Here, the second petition raises substantive due process claims regarding Petitioner's prolonged detention. (ECF No. 3 at 4–6.) Given that prolonged detention claims are inherently

dynamic and evolve as the time in detention lengthens, the Court recommends finding that dismissal is not warranted on this ground.

**B. Motion for Temporary Restraining Order**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 2 (2008) (citations omitted).

> Under the "sliding scale" variant of the *Winter* standard, "if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied."

All. for the Wild Rockies v. Pena, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoting Shell Offshore, Inc. v. Greenpeace, Inc., 709 F.3d 1281, 1291 (9th Cir. 2013)). "A preliminary injunction is an extraordinary remedy never awarded as of right." Winter, 555 U.S. at 24 (citation omitted). An injunction may only be awarded upon a clear showing that the Petitioner is entitled to relief. Winter, 555 U.S. at 22 (citation omitted).

1. Likelihood of Success on the Merits

Here, Petitioner asserts substantive due process claims regarding Petitioner's prolonged detention. (ECF No. 1 at 4–5; ECF No. 3 at 4–6.) "As an initial matter, the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment." United States v. Salerno, 481 U.S. 739, 746 (1987) (citing Bell v. Wolfish, 441 U.S. 520, 537 (1979)). "A due process violation occurs when detention becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its regulatory purpose." United States v. Torres, 995 F.3d 695, 708 (9th Cir. 2021) (citing Salerno, 481 U.S. at 747). "The point at which detention constitutes a due process violation requires a case-by-case analysis." Torres, 995 F.3d at 708 (citing United States v. Gelfuso, 838 F.2d 358, 359–60 (9th Cir. 1988)).

This Court has previously looked at the following five factors articulated in Doe v. Becerra, 723 F. Supp. 3d 688, 692 (N.D. Cal. 2024), to determine whether an immigration

detainee subject to prolonged detention is entitled to relief under the Fifth Amendment's substantive due process clause:

> (1) the length of detention and whether it is excessive in relation to its regulatory purpose;
>
> (2) the government's contribution to any delay;
>
> (3) the evidence supporting the determination that detention is warranted to prevent flight risk or community danger;
>
> (4) whether the government interests in ensuring appearance at future proceedings and protecting the community could be protected through alternatives to detention that are less harsh; and
>
> (5) the conditions of detention and how they compare to conductions under which pretrial criminal detainees or people convicted of crimes are held.

Gutierrez Romo v. Chestnut, No. 1:26-CV-03449 KES FJS (HC), 2026 WL 2254385, at *5 (E.D. Cal. Aug. 4, 2026) (quoting Becerra, 723 F. Supp. 3d at 692).

**a. Length of Detention**

In the context of criminal pretrial detention, the Ninth Circuit has observed, "It is undisputed that at some point, pretrial detention can 'become excessively prolonged, and therefore punitive,' resulting in a due process violation." Torres, 995 F.3d at 708 (quoting Salerno, 481 U.S. at 747 n.4). Torres held that a twenty-one-month detention due to the COVID-19 pandemic and related courthouse closures did not violate due process, but the Ninth Circuit "caution[ed] that the length of Torres's detention is approaching the limits of what due process can tolerate" and noted that "all parties agree that at some point, regardless of the risks associated with Torres's release, due process will require that he be released if not tried." Torres, 995 F.3d at 709, 710 (citing United States v. Briggs, 697 F.3d 98, 103 (2d Cir. 2012) ("There is no bright-line limit on the length of detention that applies in all circumstances; but for every of set of circumstances, due process does impose some limit.")). In the immigration detention context, the Ninth Circuit has stated that "[a]s a general matter, detention is prolonged when it has lasted six months and is expected to continue more than minimally beyond six months." Diouf v. Napolitano, 634 F.3d 1081, 1092 n.13 (9th Cir. 2011).

///

The Ninth Circuit has upheld an immigration detainee's detention that lasted forty-one months and would continue while the petitioner's petition for review was pending in the Ninth Circuit. Prieto-Romero v. Clark, 534 F.3d 1053 (9th Cir. 2008). This Court has held that a petitioner's "detention of twenty-one months is not excessively prolonged to find a substantive due process violation," Shafaq v. Warden, California City Corr. Facility, No. 1:26-CV-00299 JLT SKO, 2026 WL 1785249, at *8 (E.D. Cal. June 22, 2026), and a petitioner's "thirty-month detention, during which Petitioner received an individualized bond hearing before an immigration judge where the government had the burden of justifying his continued detention by clear and convincing evidence, without more, does not violate Petitioner's substantive due process rights," Espinoza v. Wofford, No. 1:24-CV-01118-SAB-HC, 2025 WL 1556590, at *10 (E.D. Cal. June 2, 2025). Here, Petitioner has been detained for approximately twelve months. Accordingly, the Court recommends finding that the length of detention does not weigh in favor of Petitioner.

**b. Government Contribution to Delay**

There is nothing in the record before this Court regarding the government's contribution to any delay. Accordingly, the Court recommends finding that the second factor does not weigh in favor of Petitioner.

**c. Flight Risk and Community Danger**

> To determine whether an alien is a danger to the community or a risk of flight, an IJ weighs nine factors under BIA precedent. *Guerra*, 24 I. & N. Dec. at 40. The nine factors an IJ "may" consider "include any or all of the following:"
>
> > (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.
>
> *Id.* And "[t]he *Guerra* factor most pertinent to assessing dangerousness" is "the alien's criminal record, including the extensiveness of criminal activity, the

> recency of such activity, and the seriousness of the offenses." *Singh*, 638 F.3d at 1206 (quoting *Guerra*, 24 I. & N. Dec. at 40).

Martinez v. Clark, 124 F.4th 775, 783 (9th Cir. 2024).

Petitioner "alleges that the criminal prosecution previously relied upon in connection with custody has since been dismissed and that she has no resulting criminal conviction arising from those allegations." (ECF No. 1 at 5.) The Court notes that neither party has provided the Court with a transcript or recording of the bond hearing or a copy of the IJ's written bond order. Further, Petitioner has not provided any documentation regarding any dismissed criminal charges and provides no allegations regarding the other Guerra factors. Accordingly, the Court recommends finding that the third factor does not weigh in favor of Petitioner.

**d. Alternatives to Detention**

> The next question is whether the government's interests in limiting the risks of flight and community danger can be adequately protected through alternatives to detention that are less harsh. If alternatives can mitigate risks and protect the government's interests, then detention (instead of one of these alternatives) is excessive in relation to those interests and unconstitutionally punitive.

Becerra, 732 F. Supp. 3d at 1088. As set forth above, however, Petitioner has not provided the Court with sufficient information regarding her risks of flight and danger, and thus, the Court is unable to determine whether the government's interests in limiting the risks can be adequately protected through alternatives to detention that are less harsh. Accordingly, the Court recommends finding that the fourth factor does not weigh in favor of Petitioner.

**e. Conditions of Detention**

> "[A] civil detainee awaiting adjudication is entitled to conditions of confinement that are not punitive." *Jones v. Blanas*, 393 F.3d 918, 933 (9th Cir. 2004). "[A] restriction is 'punitive' where it is intended to punish, or where it is 'excessive in relation to its non-punitive purpose,' or is 'employed to achieve objectives that could be accomplished in so many alternative and less harsh methods.' " *Id.* at 933–34 (alteration accepted) (first quoting *Demery v. Arpaio*, 378 F.3d 1020, 1028 (9th Cir. 2004); and then quoting *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1484 (9th Cir. 1993)). But "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.' " *Wolfish*, 441 U.S. at 539, 99 S.Ct. 1861.

Fraihat v. U.S. Immigr. & Customs Enf't, 16 F.4th 613, 647 (9th Cir. 2021) (first alteration added).

In Jones v. Blanas, 393 F.3d 918, (9th Cir. 2004), the Ninth Circuit held:

> With respect to an individual confined awaiting adjudication under civil process, a presumption of punitive conditions arises where the individual is detained under conditions identical to, similar to, or more restrictive than those under which pretrial criminal detainees are held, or where the individual is detained under conditions more restrictive than those he or she would face upon commitment.

Jones, 393 F.3d at 934. However, in Fraihat, which addressed whether ICE's COVID-19 policies reflected unconstitutional punishment under the Fifth Amendment, the Ninth Circuit observed that "*Jones* announced the foregoing comparative presumption in the context of a California state prisoner who was civilly detained and awaiting proceedings under California's Sexually Violent Predator Act" and "Plaintiffs have not identified authority from this Court extending *Jones*'s presumption to the context of federal immigration detainees." Fraihat, 16 F.4th at 648. The Ninth Circuit further observed that there is "no support in our cases for applying *Jones*'s presumption about comparative 'conditions' of confinement to the government's continued *ability* to confine persons pursuant to lawful authority." Id. at 649. Although Fraihat "assum[ed] without deciding that it would be appropriate to invoke that presumption in the immigration context," the Court declines to invoke the presumption here because, as noted by the Ninth Circuit, "different government interests are at stake" in the immigration context. Fraihat, 16 F.4th at 648.

The petition alleges that "Petitioner survived extensive domestic violence[,]" "[s]he continues suffering from severe trauma[,]" "[c]ontinued confinement has significantly aggravated those conditions[,]" and "Petitioner spends much of her detention crying and experiencing worsening depression." (ECF No. 3 at 4.) The motion for TRO states: "According to the petition and supporting declaration, Petitioner has experienced persistent abnormal bleeding, recurrent nosebleeds, weight loss, depression, and worsening psychological trauma associated with prior domestic violence. She alleges that these conditions have continued despite repeated requests for medical attention and that detention itself has aggravated her mental health." (ECF No. 1 at 5–6.) The Court notes that the allegations in the motion for TRO regarding "persistent abnormal bleeding, recurrent nosebleeds, weight loss, depression" and "repeated requests for medical attention" are not contained in the petition and there is no supporting declaration.

In Gutierrez Romo, the court found the "conditions of petitioner's confinement weigh in favor of finding that petitioner's detention violates due process" where it was "undisputed that petitioner has suffered two strokes in detention, and that, after the first stroke, staff checked his blood pressure and administered an EKG but provided no further treatment" and "Petitioner had to wait two days to be transported to a hospital for a CT scan"; after the second stroke, the petitioner "waited two days to see a nurse, was given no wound care supplies, and was forced to cover an open wound with shrink wrap from his dinner packaging"; a doctor "reviewed California City's records and concluded that petitioner's case is the most egregious case of delayed care for life threatening medical conditions that I have seen to date"; the petitioner "requested evaluation of a growing throat mass that is making it increasingly difficult for him to speak and swallow, but California City staff told him that he would have to wait months"; the petitioner was repeatedly "deprived of access to his prescribed inhaler for COPD, which at one point caused his oxygen levels to drop to 77%—a life-threatening level—requiring emergency hospitalization"; the petitioner was "denied basic orthopedic accommodations, including a cane and prescribed supportive footwear for his degenerative spinal condition, leaving him in unmanaged pain and at risk of further injury"; the petitioner was held in medical solitary confinement in a single-occupant cell without a working shower; and petitioner was not permitted to attend the funerals of his father and sister-in-law who died while he was detained. Gutierrez Romo, 2026 WL 2254385, at *5–6.

In Shafaq, the court found "the conditions of confinement do not significantly weigh in Petitioner's favor" where the petitioner was diagnosed with an inguinal hernia, his scheduled surgery was canceled, and he submitted a letter from a doctor stating that if left untreated, the herniated abdominal contents may become trapped and compromise blood supply to the entrapped tissue leading to tissue death, and that, if not properly managed, the hernia could result in bowel obstruction, perforation, sepsis, and even death. Shafaq, 2026 WL 1785249, at *9. The Court stated that "[a]lthough Petitioner's inadequate access to medical care is deeply concerning, the facts in the record do not rise to the level of a constitutional violation necessitating Petitioner's immediate release" particularly "given that [Petitioner] is a member of a

provisionally certified class of persons in CCDF custody bringing claims under the Fifth Amendment related to the conditions at CCDF."[3] Id. at *10 (internal quotation marks and citation omitted). In Guillermo M.R. v. Albarran, No. 25-CV-05436-RFL, 2026 WL 1486580 (N.D. Cal. May 27, 2026), the district court found that discontinuation of one previously prescribed psychotropic medication, change in dosage and frequency of another, and extremely limited counseling sessions resulting in "instrument-validated psychological deterioration across all assessed domains—PTSD, depression, anxiety, panic disorder, and substance use recovery" "do not yet rise to the level of a constitutional violation necessitating . . . release." Id. at *5.

Here, Petitioner has not provided documentation, a declaration, or sufficient allegations regarding the deterioration of Petitioner's physical and psychological condition and the (lack of) medical care received. See Andres A.B. v. Warden of the California City Detention Facility, No. 1:26-CV-01707-TLN-EFB, 2026 WL 2606841, at *6 (E.D. Cal. Sept. 3, 2026) (finding conditions of confinement factor weighed in petitioner's favor in part because "Petitioner's serious allegations regarding substandard conditions, by contrast, are supported not only by his own statements, and those of his counsel, but are well documented in the government reports Petitioner cites, which are appropriate subjects of judicial notice."). Based on the foregoing, the Court finds that based on the record before the Court at this time, Petitioner's case does not rise to the level of Shafaq and Guillermo M.R., much less Gutierrez Romo. Accordingly, the Court recommends finding that the conditions of confinement factor does not weigh in favor of Petitioner.

2. Conclusion

In sum, none of the five Doe v. Becerra factors weigh in favor of Petitioner. Accordingly, the Court recommends finding that Petitioner is not likely to succeed on the merits of her substantive due process claims. Because Petitioner "fails to meet this threshold inquiry, we need

[3] The provisional *Ruiz* Injunction requires, among other things, that the government provide "constitutionally adequate health care" at CCDF including "continuity of medical care upon intake and thereafter, including timely completion of active medical orders, access to scheduled provider appointments, and consistent provision of medication; timely access to prescribed medications; and a responsive 'sick call' request system." *Id.* at 3. An external monitor has been appointed to ensure compliance. Guillermo M.R. v. Albarran, No. 25-CV-05436-RFL, 2026 WL 1486580, at *5 (N.D. Cal. May 27, 2026).

not consider the other factors." California v. Azar, 911 F.3d 558, 575 (9th Cir. 2018) (internal quotation marks omitted).

**III.**

**RECOMMENDATION & ORDER**

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1. Petitioner's motion for temporary restraining order (ECF No. 1) be DENIED; and
2. Respondents' motion to dismiss (ECF No. 9) be DENIED.

Further, the Court DENIES Petitioner's request for expedited ruling (ECF No. 14).

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections with the Court, **limited to fifteen (15) pages in length, including any exhibits**. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **October 6, 2026**

STANLEY A. BOONE
United States Magistrate Judge